**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| ANGELA F. SMITH,<br>　　　　Plaintiff<br><br>v.<br><br>THE PUBLIC SCHOOLS OF NORTHBOROUGH-<br>SOUTHBOROUGH MASSACHUSETTS, A.K.A.<br>NORTHBOROUGH PUBLIC SCHOOLS, and<br>TOWN OF NORTHBOROUGH,<br>MASSACHUSETTS,<br>　　　　Defendants. | CIVIL ACTION<br>NO. 14-40165-TSH |

**MEMORANDUM OF DECISION AND ORDER**
**September 24, 2015**

**Background**

Angela Smith ("Smith" or "Plaintiff") has brought an action against the Public Schools of Northborough-Southborough ("NPS") and the Town of Northborough ("Northborough," and, together with NPS, "Defendants") alleging that she was constructively discharged and/or subjected to a hostile work environment such that she suffered an adverse employment action. *See Pl's First Amended Comp.* ("Complaint"). More specifically, Smith, a former special education teacher with NPS, alleges that she was retaliated against for attempting to protect the rights of disabled students, and that the Defendants failed to provide reasonable accommodations for her disability, Post-Traumatic Stress Disorder ("PTSD"). She has asserted claims against the Defendants for disability discrimination and retaliation, in violation of the Rehabilitation Act of 1973, § 504, 29 U.S.C. §794 ("Rehabilitation Act") and Titles I, II and V of the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.* ("ADA"). Smith has also brought corresponding state

law claims under the Massachusetts anti-discrimination statute, Mass. Gen. L., ch. 151B ("Chapter 151B"), and a state law claim for breach of contract.  This Memorandum of Decision and Order addresses Defendants' Motion to Dismiss (Docket no. 16).  For the reasons set forth below, that motion is *allowed*, in part, and *denied*, in part.

## Standard of Review

To overcome a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must allege sufficient facts "to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 667, 129 S. Ct. 1949 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546, 127 S. Ct. 1955 (2007).  The plausibility of a claim is evaluated in a two-step process.  *Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 43 (1st Cir. 2013).  First, the court must separate the complaint's factual allegations, which must be accepted as true, from its conclusory legal allegations, which are not entitled to the presumption of truth.  *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013); *Manning*, 725 F.3d at 43.  Second, the court must accept the remaining factual allegations as true and decide if, drawing all reasonable inferences in the plaintiff's favor, they are sufficient to show an entitlement to relief.  *Manning*, 725 F.3d at 43  The court draws on judicial experience and common sense in evaluating a complaint, but may not disregard factual allegations even if it seems that actual proof of any particular fact is improbable.  *Iqbal*, 556 U.S. at 667, 129 S. Ct. 1949; *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955.  A motion to dismiss must focus not on whether the plaintiff will ultimately prevail, but whether he or she is entitled to offer evidence to support the claims.  *Mitchell v. Mass. Dep't of Corr.*, 190 F. Supp.2d 204, 208 (D. Mass. 2002) (quoting *Scheur v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683 (1974)).

**Facts**

Smith had worked as a special education teacher in Massachusetts since 1992. She worked for NPS from July 2003 until her resignation in May 2012. *Complaint*, ¶¶ 6, 54. In 2008, while teaching at the Robert E. Melican Middle School ("Melican"), Smith was diagnosed with PTSD as a result of repeated assaults by a student with severe special needs and violent tendencies. *Id.*, at ¶¶ 9, 10. As a result of her PTSD, Smith, grinds her teeth at night, experiences loss of appetite, has trouble sleeping, and suffers from anxiety. *Id.*, at ¶¶ 11, 12. She has had these symptoms continuously since her diagnosis. *Id.,* at ¶ 14.

Smith filed a complaint against NPS with the EEOC on November 30, 2010, alleging disability discrimination, age discrimination, and retaliation based on her PTSD. *Id.*, at. ¶15. On September 21, 2011, a settlement was reached among Smith, the Northborough Teachers' Association ("NTA"), and NPS. *Id.*, at ¶ 16. The settlement agreement provided that Smith would withdraw her EEOC complaint and work as a special education teacher at a different school, the Fannie E. Proctor Elementary School ("Proctor"), that she would be provided with "mutually agreeable professional development opportunities for growth consistent with her professional development plan and building needs," and that Proctor's principal, Margaret Donohoe ("Donohoe"), would "establish a transition plan detailing the performance expectations after consultation with Ms. Smith and a representative of her choosing." *Id.*, at ¶¶ 16-19. Smith withdrew her EEOC complaint and began working at Proctor on September 22, 2011. *Id.*, at ¶¶ 21, 112.

Smith did not have a license to teach Pre-Kindergarten through Grade 5 and was given a waiver in order to hold her position at Proctor. *Id.*, at ¶40. Soon after starting at Proctor, Smith complained that service providers and general education teachers were not consulting with each

other. This led to special needs students being pulled out of general education classes to accommodate Smith's provision of services in accordance with the students' Individualized Education Programs ("IEPs"). *Id.*, at ¶ 22. Students were also not provided services required by their IEPs because of scheduling conflicts, *i.e.*, Smith was scheduled to be an aide in other classrooms during the time periods the IEPs stated Smith was scheduled to provide those services to special needs students. *See id.*, at ¶ 28.

On November 10, 2011, Smith sent a written request for accommodations for her PTSD to NPS. *Id.,* at ¶41. NPS did not provide the requested accommodations. *Id.* On November 14, 2011, Smith received a letter from Donohoe, dated November 9, 2011, which informed her (Smith) that her job performance was not meeting NPS standards. *Id.,* at ¶¶ 37, 38. The same day, Smith requested accommodations for her disability, including various tools for the formal evaluation of students. *Id.*, at ¶ 42. On November 23, 2011, Smith's counsel sent a letter to NPS Superintendent Charles Gobron requesting accommodations for Smith, along with a letter from Smith's treating psychologist requesting specific accommodations, including providing Smith with a mentor, providing training on the use of formal assessments she was not previously trained to conduct, and providing a clear schedule. *Id.*, at ¶¶ 43-44. The letter from Smith's psychologist was also provided to Donohoe. *Id.* Counsel for NPS responded, indicating that Smith had been provided accommodations and that NPS would continue providing accommodations. *Id.*, at ¶¶ 45. According to Smith, NPS paid only "lip service" to the requested accommodations, and Donohoe began harassing her. *Id.*, at ¶¶ 46.

On November 28, 2011, Donohoe asked to see a document draft from Smith five minutes before a meeting with a student's parents and interrupted and contradicted Smith during the meeting. *Id.*, at ¶47a. On December 1, 2011, she asked Smith on two occasions if she had taped

4

a door lock open; she also sent a school-wide email asking that the responsible person "turn themselves in." *Id.*, at ¶ 47b.  Donohoe once issued a schoolwide "all call" page to locate Smith when she was in a room across the hall from the room she was scheduled to meet Donohoe in, then spoke to Smith about how she had needed to interrupt the school to find her. *Id.*, at ¶47c. On December 16, 2011, Smith was scheduled for meetings throughout the holiday season when other teachers were not. *Id.*, at ¶47d.  On December 20, 2011, Smith's mentor and another teacher told her that Donohoe was trying to make Smith quit. *Id.*, at ¶47e.  During a state audit in January 2012, Smith was not allowed to be interviewed by the Department of Education in relation to a student that she complained had not received services in accordance with his IEP. *Id.*, at ¶47h. Throughout Smith's employment at Proctor, Donohue was critical and gave contradictory instructions. *Id.,* at ¶47i.  Smith was not scheduled time to complete required IEP consults. *Id.*, at ¶47j.  Smith's last day of work at Proctor was February 3, 2012. *Id.*, at ¶54.  She notified NPS that she was resigning on May 18, 2012. *Id.* [1]

## Discussion

### *Retaliation for Advocating on Behalf of Students (Counts 1 and 2)*

Smith has asserted claims for retaliation under the Rehabilitation Act, and the ADA. More specifically, she alleges that the Defendants retaliated against her for engaging in protected conduct, *i.e.,* advocating for the rights of disabled students entitled to receive a Free Appropriate Public Education ("FAPE") in the least restrictive environment ("LRE") in accordance with the Individuals with Disabilities Education Act ("IDEA")*,* 20 U.S.C.§§ 1400-1482.[2]  The Defendants

---

[1] Smith did not include any factual assertions regarding the circumstances under which she left her employment on February 3, 2012 and what happened from that date until her resignation on May 18, 2012.  Given the tenuousness of her claims, that omission is conspicuous.

[2] Smith has not alleged that the Defendants violated her First Amendment rights by retaliating against her for expressing her opinion that NPS was not in compliance with state and federal laws pertaining to the needs of special education students. *See Decotiis v. Whittemore* 635 F.3d 22 (1st Cir. 2011).  Her failure to allege such a claim

assert that Smith's retaliation claims must be dismissed for failure to state a claim because advocating on behalf of disabled students is insufficient to state a violation under the Rehabilitation Act, the ADA and Chapter 151B.

"Both the Rehabilitation Act, through its implementing regulations, see 28 C.F.R. § 42.503(b)(1)(vii), and the ADA, see 42 U.S.C. § 12203(a), prohibit retaliation against any person, whether disabled or not, for opposing disability-based discrimination made unlawful by those statutes. *D.B. ex rel. Elizabeth B. v. Esposito*, 675 F.3d 26, 40-41 (1st Cir. 2012).[3] To state a claim for retaliation under the Rehabilitation Act or the ADA, a plaintiff must allege that: (1) s/he engaged in protected conduct, (2) s/he was subjected to an adverse action by the defendant, and (3) there was a causal connection between the protected conduct and the adverse action. *Id.*, at 41. Smith has pled that she advocated for disabled students who were not receiving the educational services to which they were entitled under the IDEA. Such educational

---

is understandable as Smith would have to establish that she was speaking as a citizen, and not as a public employee carrying out her official duties. *See id.*

[3] More specifically, Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The anti-retaliation provision contained in Title V of the ADA provides that "[n]o private or public entity shall discriminate against any individual who has opposed any act or practice made unlawful by this part or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.... 29 U.S.C. § 794(a) (*codifying* Section 504). Furthermore, the Rehabilitation Act incorporates the anti-retaliation provision of Title VI of the Civil Rights Act of 1964: "The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 ... shall be available to any person aggrieved *by* any act or failure to act by any recipient of Federal assistance...." 29 U.S.C. § 794a(2). Thus, the Rehabilitation Act's protections apply to "'any individual' who has been intimidated, threatened, coerced, or discriminated against 'for the purpose of interfering with [protected rights]' under Title VI of the Civil Rights Act or the Rehabilitation Act." *Weber v. Cranston Sch. Comm.*, 212 F.3d 41, 48 (1st Cir. 2000)(*quoting* 34 C.F.R. § 100.7(e)) (*citing* § 104.61) (granting standing under section 504 of Rehabilitation Act to mother who claimed school system had retaliated against her personally for attempting to enforce her disabled child's rights); *see also Barker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 825 (9th Cir. 2009).

services are covered under Title II of the ADA. *See Decotiis v. Whittemore*, 842 F.Supp.2d 354 (D.Me. 2012)(citing *Barker v. Riverside County Office of Educ.*, 584 F.3d 821, 828 (9th Cir. 2009)). Therefore, Smith has satisfied the first prong. Whether she can establish that she suffered an adverse employment action is a closer call and one as to which she faces a high hurdle on summary judgment or at trial. However, at this stage of the proceedings, I find that her allegation that she was constructively discharged is sufficient to state a plausible claim. Likewise, her allegations state a plausible claim under the Rehabilitation Act. *See Reinhardt v. Albuquerque Public Schools Bd. of Educ.*, 595 F.3d 1126 (10th Cir. 2010); *Barker,* 584 F.3d at 824- 826, 828; *see also Decotiis*, 842 F.Supp.2d at 371-72 (First Circuit has recognized that separate analysis of Section 504 claims is not necessary when ADA claim is being considered on same ground). For the reasons stated above Defendants' motion to dismiss Count 1 and 2 is denied.

*Violation of the ADA and Rehabilitation Act: Disability Discrimination (Counts 3, 4 and 5)*

Smith also alleges that Defendants discriminated against by failing to provide her with requested, reasonable accommodations-- specifically in terms of additional training and professional development. She has asserted claims under the ADA, the Rehabilitation Act and Chapter 151B. As noted above, the First Circuit has stated that identical claims brought pursuant to the ADA and Rehabilitation Act are subject to the same analysis. *Caler-Cerezo*, 355 F.3d. at 19; *see also Mendez v. Brown*, 311 F. Supp. 2d 134, 140 n. 3 (D. Mass. 2004)("Disability" is defined identically under the ADA and the Rehabilitation Act). Additionally, Chapter 151B tracks the ADA in virtually all respects. *Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 20 n.5 (1st Cir. 2009). Thus, this Court looks to federal case law interpreting the ADA as a guide to the interpreting Chapter 151B. *See Everett v. 357 Corp.*, 453 Mass. 585, 599 n. 20, 904 N.E.2d

733 (Mass. 2009); *Russell v. Cooley Dickinson Hosp., Inc.*, 437 Mass. 443, 451 n. 6, 772 N.E.2d 1054 (Mass. 2002). The ADA provides that "no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112. To state a prima facie case of disability discrimination under these statutes, Smith must establish that: "(1) [she] suffers from a disability or handicap, as defined by the ADA and Chapter 151B, that (2) [she] was nevertheless able to perform the essential functions of [her] job, either with or without reasonable accommodation, and that (3) [her employer] took an adverse employment action against [her] because of, in whole or in part, [her] protected disability." *Tobin v. Liberty Mut. Ins. Co.*, 433 F.3d 100, 104 (1st Cir. 2005). The ADA also requires employers to provide reasonable accommodation to otherwise qualified applicants or employees with a disability, unless the employer can demonstrate that the accommodation would impose an undue hardship on the employer's business. 42 U.S.C. § 12112(b)(5)(A). To state a prima facie case for failure to accommodate, for purposes of the third prong, Smith must establish that the Defendants "despite knowing of [her] disability, did not reasonably accommodate it." *Tobin*, 433 F.3d at 106-07.

Defendants argue that Smith has not alleged facts sufficient to establish that she has a disability, defined as "(a) a physical or mental impairment that substantially limits one or more major life activities". 42 U.S.C. § 12102(1). "Major life activities include… eating, sleeping… interacting with others, and working." 29 C.F.R. 1630.2(h)(2)(i). When determining if a person is substantially limited in a major life activity, the limitation is compared to the ability of people in the general population. *See* C.F.R. 1630.2(j)(1)(ii). An impairment need not prevent, or

significantly or severely restrict, an individual from performing a life activity in order to be considered substantially limiting. *Id.* "The term "substantially limits" shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. Substantially limits is not meant to be a demanding standard." 29 C.F.R .1630.2(j)(1)(i) Defendants do not contest that Smith has a mental impairment, but argue that she has alleged insufficient facts to establish that she is substantially limited in performing one or more major life activities. Smith, on the other hand, argues that she has sufficiently alleged that she is substantially limited in one or more major life activities, namely sleeping, eating, and working. She further argues that at the summary judgment stage, a plaintiff has "a modest burden to proffer evidence from which a reasonable inference can be drawn that a major life activity is substantially or materially limited," and therefore, she has an even lighter burden at the motion to dismiss stage. *See Miller v. Verizon Communs., Inc.*, 474 F. Supp. 2d 187, 194 (D. Mass. 2007). Given the minimal burden at this stage, I find that Smith has alleged a plausible claim that she was a qualified individual with a disability. Again, whether Smith could survive a motion for summary judgment is not before me.

Defendants also argue that Smith's requested accommodation was unreasonable because it did not flow from her disability. In general, an employer must only accommodate the limitations that flow from the disability that affect the employee in the workplace. *Crevier v. Town of Spencer*, 600 F. Supp. 2d 242, 254 (D. Mass. 2008) (citing 42 U.S.C. § 12112(b)(5); Mass. Gen. Laws. ch. 151B, § 4(16); *Peebles v. Potter*, 354 F.3d 761, 768-69 (8th Cir. 2004)). Defendants argue that the requested accommodation, training and professional development and support, does not flow from the limitations alleged, namely anxiety involving physical interactions. Smith argues that the Defendants are inaccurately describing the symptoms of her

PTSD, in that it in fact manifests itself both in terms of generalized anxiety as well as specific anxiety in situations where physically restraining children may become necessary. In Plaintiff's view, receiving the proper training, formal evaluation tools, a mentor, and a clear schedule for a job she had been given a license waiver to perform would have helped to alleviate her anxiety. At this stage of the proceedings, I find that Smith has alleged sufficient facts to state a plausible claim for failure to provide reasonable accommodation. Therefore, except as provided below, Defendants' motion to dismiss Counts 3, 4 and 5 is denied.

Defendants assert that Smith's factual allegations are insufficient to state a hostile work environment claim under the ADA, Rehabilitation Act or Chapter 151B. To the extent that Smith intended to assert separate hostile work environment claims under these statutes, they are not well articulated. Assuming she is asserting such claims, I agree that they must be dismissed. In order to state a hostile work environment claim, Smith must demonstrate " 'that the complained-of conduct was so severe or pervasive that it altered the terms of her employment … There is no mathematically precise test' .. use[d] to determine when this burden has been met, instead, [the Court] evaluate[s] the allegations and all the circumstances, considering 'the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's work performance.' " *Carmona-Rivera v. Puerto Rico*, 464 F.3d 14, 19 (1st Cir. 2006)(internal citations and citation to quoted case omitted). That Donohue was rude to Smith and occasionally insulted her is insufficient to state a claim for hostile work environment. Therefore, to the extent that she is alleging an independent hostile work environment claims under the ADA, the Rehabilitation Act and Chapter 151B, such claims are dismissed because, as a matter of law,

Smith has not alleged sufficiently pervasive or severe conduct by Defendants. *See id.* (rudeness or ostracism, standing alone, is not sufficient to support a hostile work environment claim).

### *Breach of Contract*

To state a claim for breach of contract under Massachusetts law, a plaintiff must allege, at a minimum, that there was a valid contract, that the defendant breached its duties under its contractual agreement, and that the breach caused the plaintiff damage. *Davis v. Dawson*, 15 F. Supp. 2d 64, 128 (D. Mass. 1998). A protracted discussion is not warranted as to the viability of Smith's breach of contract claim: Smith alleges that Defendants violated the settlement agreement among herself, NPS and the NTA entered on September 21, 2011. She has alleged sufficient facts to satisfy each of the elements of her claim. At this stage of the proceedings, the Court cannot find as a matter of law that her claims are barred by either a collective bargaining agreement or Chapter 151B's exclusivity provision. Therefore, she has stated a plausible claim for breach of contract.

### **Conclusion**

The Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Docket No. 16) is ***allowed***, to the extent that Plaintiff is asserting independent hostile work environment claims, but is otherwise ***denied***.

/s/ *Timothy S. Hillman*
TIMOTHY S. HILLMAN
DISTRICT JUDGE